Meyer v. Meyer.

## Henry C. Meyer v. F. W. Meyer, Adm'r, etc.

<table>
<tr><td>86</td><td>417</td></tr>
<tr><td>e100</td><td>²262</td></tr>
<tr><td>86</td><td>417</td></tr>
<tr><td>s101</td><td>93</td></tr>
</table>

1. EXPERT TESTIMONY—*When Not Competent.*—If, when furnished with all the facts and circumstances surrounding the matter in controversy, an ordinary man could determine all the elements upon the question in controversy, without interposing the judgment of another whose expertness on questions of science, skill or trade rendered such judgment necessary, then such expert testimony will not be competent.

2. SAME—*When Not a Proper Subject For.*—When the testimony of a witness is a part of the knowledge of ordinary men, it is not a subject calling for expert testimony.

3. INSTRUCTIONS—*Assuming Matter Not Proven.*—An instruction which assumes the existence of a material issue on the trial, and under the evidence a fact which, in view of the law, can not be assumed, but must be left for the jury to determine, is erroneous.

4. Master and Servant—*Duty of the Master.*—The master is bound to furnish appliances reasonably safe for a person in the exercise of ordinary care for his own safety.

Action in Case, for personal injuries. Appeal from the Circuit Court of Cass County; the Hon. Thomas N. Mehan, Judge, presiding. Heard in this court at the May term, 1899. Reversed and remanded. Opinion filed December 13, 1899.

Mills & McClure, attorneys for appellant.

Lyman Lacey, Sr., R. R. Hewitt, Charles A. Schaeffer and Finis E. Downing, attorneys for appellee.

Opinion per Curiam.

Appellant was sued by appellee for damages on account of negligence resulting in the death of Edward E. Meyer, appellee's intestate, while deceased was, in the exercise of due care for his own safety, performing certain labor in the employment of appellant. The declaration consists of two counts—the second of which is in substitution of another not considered in the case—which charge in substance that appellant owned and operated an ice plant for harvesting, handling and storing natural ice, in operating which a revolving shaft with a set screw in a collar, and a clutch for the gearing, was used with a platform; that the machinery was ordinarily managed, without mounting the platform, by ropes and pulleys which, when out of repair, necessitated a man to stand on the platform to use a lever; that appellant negligently maintained such machinery without encasement on an improper platform, and deceased, as appellant's servant, went upon the platform to operate the machinery, where his clothing was caught by the set-screw and he was killed; and also that such platform was not safe for the purpose; that it was no part of deceased's employment to work the lever, but to shovel ice; that appellant was represented there by a foreman who negligently ordered deceased to quit his proper duty and to go upon the platform and operate the lever, whereby he was killed. A trial by jury resulted in a verdict and judgment against appellant for $2,000, to reverse which this appeal is taken.

The evidence shows that on the night of February 2, 1899, the weather being cold, appellant was hurriedly storing ice in anticipation of a thaw.  The ice was hauled up an inclined plane by steam power applied through an endless chain by means of a revolving shaft, the collar of which was held in place by a set screw, which projected one inch from the collar, and revolved with it at a speed of eighty-two revolutions per minute, the whole of this machinery being high in the air at the side of an ice-house.  The gearing was manipulated usually by ropes and pulleys from below; but in case of such appliances being disabled, the gearing was also controlled by a lever, to operate which one was compelled to get upon a platform with his feet at or near the level of the revolving shaft, and to stand there with the collar and set screw a few feet away.  On the night in question something went wrong with the ropes and pulley control of the gearing; and deceased went, at the request or order of appellant's foreman, from his work shoveling slush ice, to mount the platform and operate this lever.  He was furnished a lantern and accompanied to the position by the foreman, who threw the lever once or twice, and who, after seeing deceased do the same, left him there at about ten o'clock with the admonition not to attempt to get out until the machinery stopped.  The machinery was stopped later to adjust the chain which had slipped, when deceased did descend and assist in replacing it, several other men helping upon top of the platform.  After the chain was replaced deceased resumed his position on the platform and operated the lever frequently as he had prior to the incident of the chain slipping.  At about one o'clock some queer noise was heard, the machinery was stopped, and on investigation deceased was found suspended from the shaft, his life extinct, his clothing wrapped on the shaft with the inside hem at the bottom of the right trouser leg fastened on the set screw.  The shaft, collar and set screw were not boxed in any manner.  The collar and set screw were at the east end of the shaft, several feet from the place deceased was directed to stand.  During the trial four witnesses,

called at the instance of appellee, were permitted to testify over appellant's objection, to the effect that the shaft, collar and set screw were, in their opinions, dangerous and unsafe for the operator of the lever, because they were not boxed or covered. The evidence further tends to show that the deceased was a careful man.

One of the errors urged to reverse this judgment is that the court should have sustained the objection to the testimony of the four witnesses who, in the nature of experts, declared the machinery dangerous and unsafe. In this age it is within the common observation of every one that a swiftly whirling collar on a shaft with the stub of a set screw projecting from it, is a menace to all who get within radius of its tangling power. No jury could possibly need evidence on that subject; and yet it was a question of fact in this case for the jury to determine from all the evidence whether the machinery and all its appliances was reasonably safe, when in its operation at that place one used ordinary care for his own safety. If, when furnished with all the facts and circumstances surrounding the matter in controversy an ordinary man could determine all the elements of that question without interposing the judgment of another whose expertness on some question of science, skill or trade rendered such judgment necessary, then such expert testimony would not be competent; and in so far as the expert testimony would be competent it would be a part of the ultimate judgment or determination arrived at. The matter of the testimony of these four witnesses being a part of the knowledge of ordinary men, it was not a subject calling for the expert testimony, and to ask and admit the opinions of the witnesses therein was improper; it was for the jury to say, not the witnesses. Brink's, etc., Co. v. Kinnare, 168 Ill. 643. The admission of this testimony was prejudicial error.

It is then urged that the court erred in giving certain instructions. The first instruction complained of is in effect that if the foreman in the scope of his authority ordered the deceased to leave certain work, then engaged in, and to proceed to operate the machinery, and if deceased obeyed

and did operate the machinery, and while in the exercise of ordinary care was killed by it, and further, if the order was negligently given and the machinery was dangerous to his safety, under the circumstances, as operated, by reason of being uncovered or not cased, and that it was negligently erected in that condition, and for a long time so operated, then the defendant would be guilty of such negligence as would entitle the plaintiff to recover, provided deceased was not guilty of contributory negligence; and that knowledge of some danger in case a servant obeys his master's order is not an assumption of the increased risk by the servant unless the danger was such that an ordinarily prudent man would not have encountered it, notwithstanding the master's order. This instruction goes to the whole case and is bad for several reasons. It assumes that deceased was employed in the first instance for the express purpose of shoveling slush ice. While that was the particular work he happened to be engaged in at the time of the change in his duties, we do not gather, from the evidence, that was the sole purpose of his employment. The instruction further assumes that deceased was properly carrying out his duties in the line of his employment at the time of the accident. This of course is appellee's contention throughout the case; but it was one of the material issues on the trial, and, under the evidence, a fact which, in view of the law, could not be assumed, but must be left for the jury to determine. The instruction further directs the jury upon the event of their finding the machinery dangerous to the safety of Meyer "under the circumstances when and where he was so operating the same," by reason of the lack of covering or boxing. This does not limit the matter of the safety of the machinery to a person in the exercise of ordinary care. The master is bound to furnish appliances reasonably safe to a person in the exercise of ordinary care for his own safety. The law in that regard should have been so stated in effect; it was error to do otherwise. Finally the instruction assumes that there was some increased risk in connection with the duties devolved upon deceased in operating this machinery. This

was altogether a matter for the jury to decide without invasion; and the instruction is bad for that reason also.

Another instruction complained of is as follows:

" You are further instructed that where the danger attending the work is not incident to the servant's employment nor assumed by him under the contract of service, then if ordered to do extra hazardous work and the servant is injured while in the exercise of ordinary care, then he may recover, and the jury are instructed that the burden of showing the knowledge of such danger on the part of the servant is on the defendant."

This instruction assumes that whatever dangers attended the work of deceased were not incident to his employment and were not assumed by him and that he was ordered to do certain work and that such work was extra hazardous. These matters so assumed were all the proper subject of determination for the jury alone; and to thus obviate the necessity of their findings on the questions proposed was harmful error. Another instruction is as follows: " The jury are further instructed that, not only the defects but the danger must be known to the servant before he can be held to take his own risk." Here the jury were informed that regardless of whether the master knew or ought to have known of defects and danger, and regardless of whether any obligation rested upon the servant to discover the same, he could not be held to have taken his own risk with them unless he in fact knew of such defects and danger. Of course this is not the law and the instruction is palpably erroneous.

Certain other instructions complained of are defective for the reasons already stated and which the court deems it unnecessary to repeat. The assumption of controverted facts is the vice particularly apparent; and the court is compelled to say the errors are prejudicial and the judgment must be reversed.

For the errors indicated, the judgment of the Circuit Court will be reversed and the cause remanded.